**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

EUGENE GREEN                                    :          CIVIL ACTION

v.                                              :

COURT OF COMMON PLEAS, et al.                   :          NO. 08-1749


**MEMORANDUM RE: PETITION FOR HABEAS CORPUS**

**Baylson, J.**                                                   **May 8, 2008**

"Manifest necessity" is the constitutional test to determine whether a trial judge's grant of

a mistrial prevents the retrial of the defendant.  Applying the test requires consideration of many

factors, and using a sports metaphor, is more similar to deciding how many points to award a

gymnast than deciding whether a football has crossed the line.  The issue presented in this case is

whether federal habeas relief should be granted, barring a retrial, on double jeopardy grounds,

where the state trial judge declared a mistrial based on her view that defense counsel's cross

examination of an investigating detective had been improper and prejudiced the jury against the

Commonwealth.  For the reasons that follow, the Petition for Habeas Corpus will be denied.

**I.**      **Background**

   **A.      Facts**

Petitioner Eugene Green ("Petitioner," "Mr. Green") was charged in the Court of

Common Pleas of Philadelphia County with offenses in connection with the sexual assault of his

minor stepdaughter.  On March 31, 2008, his trial commenced in the Philadelphia Court of

Common Pleas before the Honorable Amanda Cooperman.  Petitioner was represented by

Thomas Ivory, Esquire, (hereinafter "Mr. Ivory," "defense counsel") and the Commonwealth was

represented by Assistant District Attorney Catherine Thurston (hereinafter "Ms. Thurston," "the Commonwealth").

On April 1, 2008, Judge Cooperman met with the attorneys before bringing the jury into the courtroom. Judge Cooperman stated, on the record, that "[Petitioner] made a statement to the police[1] that the Commonwealth is not introducing and, therefore, defense cannot introduce it unless [Petitioner] takes the stand, then [counsel] may question [Judge Cooperman] about it before then." (Pet.'s Petition, R2). The jury was then brought in and trial resumed.

Later that day, Mr. Ivory was cross-examining the Commonwealth's witness, Detective Thomas Brown, who had interviewed some of the witnesses involved with the case. On direct examination, Detective Brown had been asked about his investigation, naming some of the individuals he had interviewed. Ms. Thurston had not asked Detective Brown whether he had interviewed the Petitioner. After asking about certain witness interviews, the following exchange occurred on cross-examination:

> MR. IVORY:      And you interviewed [Petitioner] Eugene Green, correct, at a different date?
>
> DET. BROWN:     Yes.
>
> MR. IVORY:      You advised him of his rights, and he consented to give you a statement; isn't that correct?
>
> DET. BROWN:     No, sir.
>
> MR. IVORY:      Is that not correct?

---

[1] Although the transcript at this point does not reveal that the statement at issue was an exculpatory statement, both counsel agree that the statement given by Petitioner to the investigating detective was exculpatory and that under accepted and non-disputed evidentiary rules, Petitioner's exculpatory statement to the police is not admissible, by cross-examination, during the Commonwealth's case in chief.

DET. BROWN:          No, sir.

MS. THURSTON:        Objection, Your Honor.[2]

THE COURT:           Could I see you at sidebar, please?

(Pet's Petition, R6).

The Court then proceeded to have the following discussion at sidebar:

THE COURT:           Didn't I make a ruling we're not going to talk about the statement?

MR. IVORY:           I'm not going to get into the facts of the statement.

THE COURT:           You can't even bring up that he made one.  Absolutely improper.

MR. IVORY:           All right.  Well, we've been talking about all the other statements that he took, why couldn't we just mention –

THE COURT:           Mr. Ivory, because he's the defendant.  And now, if the Commonwealth doesn't introduce it, it looks like they're hiding something.  You're not allowed to do that.  The only one who can get a statement in is if the Commonwealth wants to introduce it or if your client takes the stand, and then he can be cross-examined by the Commonwealth about his statement if they want to.  You just committed

---

[2] The Commonwealth's response asserts that the transcript is not an accurate depiction of what happened in the courtroom.  According to the Commonwealth, Detective Brown had been prepped about the judge's pretrial order that there was not to be any mention of the defendant's exculpatory statement during his testimony, and being surprised that he was being asked about it, denied that there was such a statement, although in fact he had taken such a statement.  The Commonwealth made an offer of proof that Ms. Thurston would testify that the detective corrected his answer and indicated that he had taken a statement from the defendant.  Petitioner's counsel has a different view of what happened and asserted that the transcript was accurate.  Judge Cooperman stated it was possible that the detective answered the question about the statement in the negative because of some confusion about the temporal sequence of events in his investigation.  This Court declines the Commonwealth's request to reopen the record and take testimony about what occurred in the courtroom, and also rejects the Commonwealth's request that the record be remanded to Judge Cooperman to make any additional factual findings or give additional legal reasons for her rulings.

|  |  |
|---|---|
|  | error, and now I don't know if I have to declare a mistrial or not. |
| MR. IVORY: | Just so you know, Your Honor, I was not intending to get into the facts of the statement. |
| THE COURT: | It doesn't matter, Mr. Ivory.  I've just explained this to you.  Why are you arguing with me? |
| MR. IVORY: | I'm not arguing.  I'm explaining myself. |
| THE COURT: | It doesn't matter.  I told you that nothing about the statement was coming in unless the situation reversed and the defendant somehow took the stand and then it was to be used, not in the Commonwealth's case. |
| MR. IVORY: | All right. |
| THE COURT: | I think now it's a mistrial.  I really do.  Unbelievable.  I don't know what to do.  Let's go out and let the jury take a break.  Let me think about it. |

(Pet.'s Petition, R6-8).  The Court then excused the jury for a recess.

After the jury was excused, the Court continued its discussion concerning a potential mistrial.  Judge Cooperman had the testimony in question read back to her, discussed and dismissed Mr. Ivory's intent in asking the question, the possibility that Petitioner intended to testify, the possibility of a contempt hearing concerning Mr. Ivory's conduct, and the possibility of a curative instruction in order to avoid a mistrial.  (Pet.'s Petition, R8-15).  With respect to the curative instruction, the Court feared that if Petitioner later chose not to testify, the Court would have done a disservice to the Commonwealth.  (Id. at R15-16).  Ms. Thurston also expressed concern with a potential curative instruction.  The Court concluded sua sponte to declare a mistrial.  (Id. at R16-18).  The Court planned to pick a new jury the next day and commence retrial on April 3, 2008.

-4-

The following day, Petitioner filed a Motion to Dismiss on the grounds of double jeopardy, as well as a Motion to Stay Proceedings Pending Appeal to the Superior Court. (Pet's Petition at 3; Def.'s Petition N.T. 04/02/08, 3). Judge Cooperman had an extended discussion with counsel, on the record, concerning the mistrial, and then denied the Motion to Dismiss, stating "It's not double jeopardy. It was a defense error where there was a violation of my ruling and the law despite everything I've said. With all due respect, double jeopardy is not granted." (Def.'s Petition N.T. 48). Judge Cooperman agreed to consider the Motion to Stay overnight, and instructed counsel to be prepared to begin trial the following morning. (Def.'s Petition N.T. 65-68).

On April 3, 2008, Judge Cooperman held that Petitioner did not have the right to appeal before the new trial because his "motion for double jeopardy is frivolous and has no arguable merit,"[3] but did allow Petitioner to petition the Superior Court for a stay of the proceedings. (Pet.'s Petition, R23). On April 4, 2008, Petitioner filed a Supplement to his Motion to Stay in the Superior Court, and the Commonwealth filed an Answer and a Motion to Quash. (Pet.'s Petition, at 4). Later that same day, the Superior Court issued a per curiam decision denying the Motion to Stay and quashing the appeal as interlocutory, relying on Judge Cooperman's

_____

[3] Pennsylvania follows a procedure pursuant to Commonwealth v. Brady, 508 A.2d 286, 290 (Pa. 1986) and Commonwealth v. Gains, 556 A.2d 870 (Pa. Super. 1989) that in these kinds of cases, the trial court has the first opportunity to identify claims as frivolous, which finding prevents litigants from interrupting the trial process with an appeal. This procedure was found to meet constitutional standards in United States v. Leppo, 634 F.2d 101, 105 (3d Cir. 1980) (holding that an appeal from the denial of a double jeopardy motion does not divest the district court of jurisdiction to proceed with trial, if the district court has found the motion to be frivolous and supported its conclusions in writing, noting that "district courts have extensive experience in deciding whether matters are frivolous." Id. at 105, n. 3).

determination that the double jeopardy motion was frivolous and without arguable merit.  (Pet.'s

Petition, R24).

On April 7, 2008, Petitioner filed before the Pennsylvania Supreme Court a Petition for

Review, a Petition for Writ of Prohibition, a Motion to Stay Trial Court Proceedings and a

Motion for Appointment of Counsel.  (Pet.'s Petition at 5).  Judge Cooperman continued the trial

for one week.  (Id.)  On April 11, 2008, the Pennsylvania Supreme Court issued a per curiam

Order denying all of Petitioner's motions without a written opinion.  Justice Thomas Saylor

issued a dissenting opinion, in which Justice Debra Todd joined, asserting that the Superior

Court should review the merits.  (Pet.'s Petition at 5-6, R25-30).

### B.      Procedural History

Petitioner filed his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 in

this Court on April 14, 2008 (Doc. No. 1), as well as an Emergency Motion to Stay (Doc. No. 2).

The Commonwealth filed a Response.  (Doc. No. 6).  Petitioner filed a Reply (Doc. No. 8).  Oral

argument was held before this Court on April 16, 2008 and May 5, 2008.

## II.     Contentions of the Parties

In his Petition for Writ of Habeas Corpus, Petitioner contends that he has exhausted all

available state court pre-trial remedies and has the right to pursue pre-trial habeas relief in federal

court.  He states that he satisfies the "in custody" requirement of the habeas statute, and that this

Section 2241 petition is the proper vehicle with which a pre-trial detainee may seek habeas relief.

Petitioner asks this Court to employ de novo review of the state court decision, reasoning that

only Section 2254 petitions receive deference under the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), and that there was no state court adjudication on the merits.  Petitioner

-6-

argues there was no manifest necessity to declare a mistrial in this case, as Mr. Ivory committed no error, but simply asked about the statement and did not introduce it, thus abiding by the trial court's order.  Petitioner further contends that even assuming counsel's question was improper, no prejudicial evidence ever reached the jury.  Furthermore, assuming counsel's question somehow prejudiced the jury, the trial court failed to exhaust other alternatives, such as a curative instruction or waiting to see if Petitioner testified.  Petitioner contends that there have been more egregious errors in other cases where sua sponte mistrials have been held improper, distinguishing Arizona v. Washington, 434 U.S. 497 (1978).

The Commonwealth argues this Court must defer to Judge Cooperman's rejection of the double jeopardy claim absent extraordinary circumstances, as the trial court's decision is entitled to "special respect" under Arizona v. Washington.  Deference is especially appropriate, the Commonwealth continues, in the interests of federalism and comity.  Furthermore, the Commonwealth contends that Petitioner's double jeopardy claim is unexhausted; Petitioner must undergo trial, and then he may raise his double jeopardy claim as part of his post-trial appeal.  The Commonwealth argues that the trial court's declaration of a mistrial was proper and qualified as "manifest necessity," as the defense acted improperly, Judge Cooperman was in the best position to evaluate the potential for prejudice to the Commonwealth, Judge Cooperman evaluated various alternatives, and did not act irrationally or irresponsibly.  As such, the Commonwealth requests this Court deny the Petition.

In his reply, Petitioner contends that he clearly exhausted his state remedies, having filed all available motions and appeals.[4]  Petitioner further argues that the standard of review is not abuse of discretion, and that the Commonwealth did not meet its burden of proving that the trial court engaged in "scrupulous exercise of judicial discretion" in declaring a mistrial, citing Arizona v. Washington.  Petitioner contends that the trial judge failed to consider any of the other possible remedies, such as a curative instruction, acting more out of anger at defense counsel than exercising her discretion in a measured, thoughtful manner.  Petitioner argues that the Commonwealth improperly relies on the trial court's after-the-fact explanations to justify the mistrial and misrepresents Detective Brown's testimony.  Petitioner argues that the cases relied on by the Commonwealth are readily distinguishable from the present case, and contends that this case is similar to many cases where no manifest necessity existed to justify a mistrial. Indeed, Petitioner continues that curative instructions have been sufficient to cure a lawyers' much more egregious mistakes in the past.  Petitioner argues that the propriety of Judge Cooperman's ruling on the admissibility of the evidence at issue is inextricably linked with this Court's determination about the manifest necessity for a mistrial, and is thus proper for federal review.  Finally, Petitioner states the trial court could have explored the alternative of waiting to see if Petitioner would testify before declaring a mistrial.

On May 1, 2008, the Commonwealth sent a letter to this Court, responding to Petitioner's Reply.   The Commonwealth disagrees with two of Petitioner's assertions: first, Petitioner asserts that the jury never heard anything prejudicial, and second, Petitioner asserts that defense

---

[4] The Court agrees with Petitioner that he presented all his federal constitutional claims in state court and therefore "exhausted" all state court remedies.

counsel's questioning did not violate the Court's order.  The Commonwealth suggests that if this Court were to undertake further review of these issues, however, that the Court should solicit direct input from the state trial court.

On May 2, 2008, Petitioner responded to the Commonwealth's letter.  In his letter, Petitioner contends that requesting the state trial judge to draft an opinion would be inconsistent with established principles of comity and federalism.  Petitioner further contended that there was no need for the trial court to draft anything further, as the trial court already drafted its written findings.

## III.   Legal Standard

### A.   *Younger* and Double Jeopardy

Absent unusual circumstances, a federal court is not permitted to intervene in ongoing state criminal proceedings.  Younger v. Harris, 401 U.S. 37, 54 (1971).  Under the principles of federalism and comity, state courts should remain free from federal court intervention as long as adequate state relief is available.  Id. at 43-44.

Yet the prohibition against federal courts intervening in state court proceedings is not without exception.  Indeed, the court in Younger recognized that it may be appropriate for a federal court to enjoin state criminal proceedings when there has been a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief."  Younger, 401 U.S. at 54.  Many courts have recognized that a colorable double jeopardy clause claim is an example of one of the very few "unusual circumstances" enunciated in Younger that justifies federal court intervention in a state court proceeding.  See Walck v. Edmondson, 472 F.3d 1227, 1233-34 (10th Cir. 2007); Gilliam v. Foster, 63 F.3d 287, 289-90 (4th Cir. 1995); Mannes v.

Gillespie, 967 F.2d 1310, 1312 (9th Cir. 1992); Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir. 1992).

A state may not put a defendant in jeopardy twice for the same offense.  Benton v. Maryland, 395 U.S. 784, 794 (1969).  Retrial is not automatically barred, however, when a criminal proceeding is terminated before ending in an acquittal or conviction.  "Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury."  Arizona v. Washington, 434 U.S. 497, 505 (1978), citing United States v. Jorn, 400 U.S. 470, 479-480 (1971).

In Abney v. United States, 431 U.S. 651 (1977), the Supreme Court held that a federal district court's pretrial order denying a motion to dismiss an indictment on the grounds of double jeopardy was an immediately appealable decision, reasoning that "the rights conferred on a criminal accused by the double jeopardy clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence."  Id. at 660.  Finding that the double jeopardy clause protects an individual against not only double punishments, but also multiple attempts to convict him of an alleged crime, the Court concluded "[these] protections would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the double jeopardy clause was designed to prohibit.  Consequently, if a criminal

-10-

defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." Id. at 662.

Appellate courts have found that "[i]n light of Abney, it is clear that federal intervention is justified where prospective state prosecutions run afoul of the double jeopardy clause.  This stems from the fact that the injury to an individual's double jeopardy rights engendered by an illegitimate successive retrial is no less irreparable simply because the prosecution comes under the guise of state, rather than federal, authority." Walck v. Edmondson, 472 F.3d 1227, 1233-34 (10th Cir. 2007), citing Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 303 (1984); see also Gilliam, 63 F.3d at 289-90.

### B.    Is Relief Properly Sought Under 28 U.S.C. § 2254 or 28 U.S.C. § 2241?

Several circuit courts have not agreed on whether a federal habeas petition pursuant to Abney should be brought under § 2241 or § 2254.  In Crawford v. Fenton, 646 F.2d 810 (3d Cir. 1981), Petitioner filed for habeas corpus relief pursuant to § 2254, although his case was filed and decided before AEDPA was enacted.  In Gilliam v. Foster, Petitioner brought his habeas petition in federal court pursuant to 28 U.S.C. § 2254.  73 F.3d 881 (4th Cir. 1996).  In Johnson v. Karnes, the Sixth Circuit reviewed the district court's decision to deny Petitioner's Section 2254 petition de novo, but reviewed the state court's grant of a mistrial pursuant to the more deferential standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 198 F.3d 589, 593 (6th Cir. 1999)

The Court of Appeals for the Tenth Circuit, however, has found 28 U.S.C. § 2254 not to apply to these types of petitions, because the phrase "judgment of a State Court" within § 2254

refers only to a conviction and sentence, and not to a court's declaration of a mistrial, and concluded a state court defendant attacking his pretrial detention should bring a habeas petition pursuant to 28 U.S.C. § 2241.  In reviewing a § 2241 petition, the district court reviews the habeas claim under a <u>de novo</u> standard of review.  <u>Walck v. Edmondson</u>, 472 F.3d 1227, 1234-35 (10th Cir. 2007).

Given the congressional amendment of § 2254 pursuant to AEDPA, this Court concludes that § 2241 presents the appropriate statutory basis for this habeas Petition, and rejects the Commonwealth's assertions to the contrary.  The Tenth Circuit has found that the "somewhat ambiguous term 'judgment of a State Court' within § 2254 refers only to conviction and sentence.  <u>Walck</u>, <u>supra</u>, at 1234, citing <u>Bulworth v. Evans</u>, 442 F.3d 1265, 1268 (10th Cir. 2006), <u>McIntosh v. United States Parole Comm'n</u>, 115 F.3d 809, 811 (10th Cir. 1997).  Many other courts have come to the same conclusion that a § 2241 petition is the correct avenue to pursue double jeopardy claims in a pre-conviction situation.  <u>See</u> <u>Braden v. Judicial Circuit Court</u>, 410 U.S. 484, 503 (1973) (Rehnquist, J., dissenting) ("Section 2254 pertains only to a prisoner in custody pursuant to a *judgment of conviction* of a state court . . . . The issue here is whether habeas corpus is warranted under § 2241(c)(3); that section empowers district courts to issue the writ, *inter alia*, before a judgment is rendered in a criminal proceeding."); <u>McNeely  v. Blanas</u>, 336 F.3d 822, 824, n. 1 (9th Cir. 2003) (concluding that, despite parties' characterization of the petition as falling under § 2254, petitioner's claim fell under § 2241 because he was a pretrial detainee and thus not being held "pursuant to the judgment of a State court" as required by § 2254); <u>Jacobs v. McCaughtry</u>, 251 F.3d 596, 597 (7th Cir. 2001) (finding that petitioner's petition was properly filed pursuant to § 2241 because "it was filed pretrial and not while he was

'in custody pursuant to judgment of a state court.'"); <u>Stringer v. Williams</u>, 161 F.3d 259, 261-62

(5th Cir. 1998) (concluding that pretrial petitions are properly brought under § 2241 "which

applies to persons in custody regardless of whether final judgment has been rendered and

regardless of the present status of the case pending against him." (internal citations omitted)).

### C.   Manifest Necessity

The Supreme Court has held that there must be "manifest necessity"[5] for any mistrial to

be declared over the objection of the defendant.  <u>Arizona v. Washington</u>, 434 U.S. at 505;

<u>Crawford v. Fenton</u>, 646 F.2d 810, 816-17 (3d Cir. 1981).  In <u>Washington</u>, the Supreme Court

held that a trial judge's determination was entitled to "special respect" when a mistrial was

granted in the instance where defense counsel has made improper and prejudicial remarks during

his opening statement.  <u>Id.</u> at 510.

In <u>Crawford v. Fenton</u>, 646 F.2d 810 (3d Cir. 1981), petitioner filed for habeas relief

pursuant to § 2254 on the grounds of double jeopardy.  The district court granted the petition,

finding that the trial judge had abused his discretion in granting a mistrial, as it was not manifest

necessity due to the existence of other alternatives to a mistrial.  <u>Crawford v. Fenton</u>, 490 F.Supp.

---

[5] In <u>United States v. Perez</u>, Justice Story wrote: "We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.  They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere.  To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour [sic] of the prisoner.   But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."  <u>United States v. Perez</u>, 9 Wheat. 579, 580 (1824).

776, 786 (D.N.J. 1980).  The Third Circuit reversed, finding that the district court was far too

strict in its analysis and that the availability of another alternative was not obvious and adequate.

Crawford, 646 F.2d at 819.

There is no set standard for evaluating the existence of "manifest necessity" in a mistrial.

Washington at 506; Crawford at 817.  The Supreme Court has stated that "it is manifest that the

key word 'necessity' cannot be interpreted literally; instead, contrary to the teaching of Webster,

we assume that there are degrees of necessity and we require a 'high degree' before concluding

that a mistrial is appropriate."  Washington, supra at 506.  The Third Circuit has stated that there

are no "hard and fast rules" with respect to when a trial judge may declare a mistrial without

barring reprosecution.  U.S. v. Allick, 2008 WL 1745150, *5 (3d Cir. Apr. 15, 2008) (not for

publication) (vacating and remanding the case when the record did not permit the court to

determine whether reprosecution was barred by the Double Jeopardy Clause).  Each case turns on

the particular facts, and those facts should support a finding of manifest necessity, regardless of

whether the trial court judge made an explicit finding of manifest necessity.  Id.

The Supreme Court details different situations when a mistrial may be granted, applying

varying levels of scrutiny depending on the circumstance.  The Court states that the "strictest

scrutiny" is appropriate when the basis for the mistrial is "the unavailability of critical

prosecution evidence" or "that the prosecutor is using the superior resources of the State to harass

or to achieve a tactical advantage over the accused."   Washington, supra at 508; see e.g. U.S. v.

Rivera, 384 F.3d 49 (3d Cir. 2004) (finding that the unavailability of a prosecution witness is

reviewed under "the strictest scrutiny" and concluding that in that situation, the mistrial did not

constitute manifest necessity).   At the other extreme, however, is the situation in which the trial

-14-

judge grants a mistrial when the jury is unable to reach a verdict; in that case, a trial judge is allowed to "exercise broad discretion" in deciding whether or not "manifest necessity" justifies a discharge of the jury.  Id. at 509.

## IV.    Discussion

### A.    Judge Cooperman's Decision to Grant a Mistrial Was Justified by Manifest Necessity

Many trial judges faced with the same situation as Judge Cooperman would have instructed the jury to ignore the improper questions by defense counsel and concluded, if only because the detective had denied the existence of a statement, that there had not been any substantive prejudice to the Commonwealth, and the trial should proceed.  "Manifest necessity," however, is not a straight and solid line where the factual situation presented by a "cold" trial record is easily observed as being on one side or the other of such a line.  As Arizona v. Washington makes clear, the reviewing habeas court must give "special respect" to the findings of the trial judge who declared the mistrial.

Several factors bear emphasis.  First, Judge Cooperman had specifically ruled that there was to be no mention of the defendant's exculpatory statement.  In doing so, she acted properly and in accord with settled evidentiary law that a defendant's exculpatory statement is not admissible by the defense during the Commonwealth's case.  Petitioner's argument, that because there was no introduction of the substance of the statement, merely asking whether defendant gave a statement is not prejudicial, misses the point and ignores the reality of the impression a jury can take from an improper question.  Mr. Ivory's question, phrased in leading form, placed on the record defense counsel's representation that the defendant had given a statement, a

thought that may linger in the minds of one or more jurors through the entire trial and into deliberations.

Further, Judge Cooperman had made it clear that she was available to make rulings about evidentiary matters in advance of questions being asked, and she had explicitly said that any questions about the defendant's statement would have to be cleared with her before it was brought out in front of the jury.  As she had specifically expressed her instructions that she would review these evidentiary issues with counsel outside the presence of the jury before the questions were asked, defense counsel was under an obligation to seek Judge Cooperman's approval before asking Detective Brown whether the defendant had made a statement.

Perhaps, if Mr. Ivory had made an appropriate showing to Judge Cooperman, she would have allowed Mr. Ivory to bring out the fact that Petitioner also made a statement, after Ms. Thurston had elicited from Detective Brown the names of a number of individuals who had given statements.  Judge Cooperman was justified in her annoyance at Mr. Ivory in asking these questions without seeking her advance approval.

The detective's answers in the negative, to the question whether Petitioner had given any statements, may have resulted from the temporal sequence, as Judge Cooperman implied, or may have resulted from his being under instructions that there was not to be any mention of the defendant's statement during his cross-examination, or otherwise.

The fact that the detective answered the question in the negative is a factor which the Court must consider in the double jeopardy context because, strictly speaking as a matter of substantive evidence, the answer negated the existence of a statement, but this is only one such factor.  If the question had been asked in a non-leading form, Petitioner would have a stronger

argument on the manifest necessity issue.  The phrasing of the question in leading form, however, although not itself improper as this was cross-examination, supports a finding of manifest necessity.  The fact that a witness gave a factually incorrect answer does not necessarily have any constitutional weight in the double jeopardy context because Judge Cooperman concluded that the mere fact that the question was asked brought an improper factor into the trial record, even though the negative answer would not allow, as a legal evidentiary matter, a conclusion that the Petitioner had made a statement.

In Arizona v. Washington, the court considered the different types of trial conduct that would bring a double jeopardy clause into play.  Under the spectrum of review provided in Washington, this case probably falls somewhere in the middle of the spectrum.  No one in the present case alleges prosecutorial misconduct; thus, the strictest standard of review would not be applied.  Defense counsel expressed a clear desire to avoid a mistrial, thus requiring a showing of manifest necessity.  But the mistrial was granted due to defense counsel's improper and prejudicial questioning, and thus Judge Cooperman's decision to grant a trial is considered under the "special respect" outlined in Washington.

Another factor to take into account is that Petitioner has not offered any Pennsylvania precedent that establishes that defense counsel's questioning, in leading form, suggesting the existence of a statement but not inquiring as to its substance, was proper despite Judge Cooperman's order to the contrary.  See Washington, 434 U.S. at 511.  Petitioner also asserts that Judge Cooperman's order was only that the statement was not to be "introduced," but the record as a whole makes it clear that Judge Cooperman's order prohibited any mention of a statement at all in front of the jury.  She wanted to proceed carefully and instructed Mr. Ivory that even if

-17-

Petitioner took the stand, Mr. Ivory would have to seek her permission before asking the defendant about the statement while he was testifying. Although there is no indication that Mr. Ivory acted with any malice or improper intent and in fact may not have violated Pennsylvania law, the absence of these factors is not determinative. The issue is whether the trial court's grant of a mistrial can be justified under the "manifest necessity" test.

In Arizona v. Washington, the Supreme Court concluded: "[T]he overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." Id. It was Judge Cooperman, and not the undersigned, who witnessed the questioning of Detective Brown by defense counsel. Thus, it was Judge Cooperman, and not the undersigned, who was in the best position to assess the possible impact of the improper questioning on the jury that day. It is not this Court's place to second-guess her decision, but only to determine if it met the "manifest necessity" test. If a trial judge acts "irrationally or irresponsibly," the action cannot and would not be condoned. Id. at 514.

But Judge Cooperman did not act irrationally or irresponsibly. She may well have been angry at defense counsel for his remarks; indeed, the record makes it clear that she was. But Judge Cooperman discussed and considered many options, including the possibility of a curative instruction, waiting to see if Petitioner testified, and disciplining defense counsel for his improper remarks. Her displeasure with Mr. Ivory for directly violating her order does not make her ultimate grant of a mistrial any less sound.[6] The trial court did not think any of these options

_____

[6] This is not to say that a judge's temperament cannot play a role in a manifest necessity analysis. In Love v. Morton, the trial judge had called a mistrial upon learning of the death of his own mother-in-law, and a new trial before a different trial judge began the next day. 112 F.3d

-18-

would solve the problem, and thus declared a mistrial.  Since she exercised "sound discretion" in

handling the sensitive problem of potential juror bias created by defense counsel's improper

questioning, the mistrial order is supported by the "high degree" of necessity which is required in

this kind of case.  Washington, 434 U.S. at 516.  Simply because the trial court chose not to

pursue other alternatives does not mean that the court abused its discretion.  See Crawford, 646

F.2d at 819-20 (in which the district court determined there to be a better alternative to a mistrial

and thus held that double jeopardy prevented retrial.  The Third Circuit reversed, finding that this

"better alternative" was not obvious and adequate, and that the record offered ample support that

manifest necessity existed for the declaration of a mistrial).

　　　　While it is true that Judge Cooperman did not use the term "manifest necessity" before

granting the mistrial and she explained her decision and analysis in more detail the following

day, this does not mean that her explanation on the day of the mistrial was inadequate.  Indeed,

the trial court in Washington did not make an explicit finding of "manifest necessity" in

declaring a mistrial.  Id. at 516.  The Supreme Court concluded that "[s]ince the record provides

---

131, 132 (3d Cir. 1997).  The new trial judge granted defendant's Section 2254 petition on the
grounds of double jeopardy.  The Third Circuit affirmed, finding that there was no manifest
necessity for a mistrial.  The Court of Appeals reasoned that the decision to grant the mistrial
could have been postponed to the next morning, giving all parties an opportunity to consider
other alternatives.  Id. at 138.  The Court further states that "All judicial decisions should be
based on calm deliberation.  When it comes to decisions squarely implicating the serious
consequences of the Double Jeopardy Clause, the necessity for collected and composed
contemplation assumes a fortiori proportions.  There was no legitimate reason for making the
mistrial decision during a time of distraught distraction."  Id.  In contrast, while it is clear from
the record that Judge Cooperman was displeased and even angered by Mr. Ivory's behavior, her
annoyance does not appear to rise to the level of "distraught distraction" and there is nothing to
suggest that she was not calm in making the actual decision to grant a mistrial.

sufficient justification for the state court ruling, the failure to explain that ruling more completely does not render it constitutionally defective." Id. at 516-17.

**B.**       **Certificate of Appealability**

The Court will grant the Petitioner a certificate of appealability because the issue is a close one.  The Petitioner does have some support in the decision of the Tenth Circuit in Walck v. Edmondson, supra, and the Third Circuit has not visited the double jeopardy issue in this factual scenario.  Although it is not relevant on the substantive issue, I am not persuaded that the Petitioner's claim is "frivolous" as Judge Cooperman found.  Because of that finding, Petitioner did not receive any substantive appellate review of his double jeopardy claim in the Pennsylvania state courts despite Abney, but should have the benefit of appellate review in a federal court.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EUGENE GREEN                                    :        CIVIL ACTION

         v.                                  :

COURT OF COMMON PLEAS, et al.                   :        NO. 08-1749

### <u>ORDER</u>

AND NOW, this 8th day of May, 2008, after reviewing all briefings and the relevant law,

it is hereby ORDERED:

1)      Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1) is DENIED;

2)      Petitioner's Emergency Motion to Stay (Doc. No. 2) is DENIED;

3)      A Certificate of Appealability is GRANTED, pursuant to 28 U.S.C. § 2253(c)(2)

         with respect to the following issue: whether there was manifest necessity for

         granting a mistrial;

4)      The Clerk shall close this case.


BY THE COURT:


/s/ Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.


A:\Green v. CCP 08-1749 - Memo Petition Habeas Corpus.wpd